UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AZTEC ENGINEERING GROUP, INC., <br> TECNICA Y PROYECTOS S.A., <br><br> Plaintiffs, <br><br> vs. <br><br> LIBERTY MUTUAL INSURANCE <br> COMPANY, <br> FIDELITY AND DEPOSIT COMPANY OF <br> MARYLAND, <br> XL SPECIALTY INSURANCE COMPANY, <br> AMERICAN HOME ASSURANCE <br> COMPANY, <br><br> Defendants. | No. 1:16-cv-01657-JMS-TAB |

## **ORDER**

Presently pending before the Court is Defendants Liberty Mutual Insurance Company, Fidelity and Deposit Company of Maryland, XL Specialty Insurance Company, and American Home Assurance Company's (collectively, the "Co-Sureties") Motion to Dismiss Or, In the Alternative, Stay Litigation and Compel Arbitration.  [Filing No. 9.]  Plaintiffs Aztec Engineering Group, Inc., and Tecnica y Proyectos S.A. (collectively, "Aztec-TYPSA") oppose the Co-Sureties' motion.  [Filing No. 18.]  For the reasons that follow, the Court denies the Co-Sureties' motion.

### I.
#### STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The statute "is Congress's manifestation of a national policy favoring arbitration and results in the placement of arbitration

agreements on equal footing with all other contracts." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). The FAA places arbitration clauses "on equal footing with other contracts," and any preference for arbitration is "reserved for the interpretation of the scope of a valid arbitration clause." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010). "Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties." *Zurich*, 466 F.3d at 580.

## II.
### BACKGROUND

### A. The Project

On April 8, 2014, the Indiana Finance Authority ("IFA") awarded I-69 Development Partners LLC (the "Developer") a Public-Private Agreement (the "PPA") pursuant to Indiana Code § 8-15.5-1-1, *et seq.*, for the Developer to design, build, finance, operate, and upgrade approximately 21 miles of existing State Road 37 into an interstate highway (the "Project"). [Filing No. 1 at 3.] Corsan Corviam Construcción, SA ("Corsan"), entered into a Design-Build Contract with the Developer for the design and construction work of the Project. [Filing No. 1 at 4.] Corsan later assigned the Design-Build Contract to its affiliate Isolux Corsan, LLC ("Isolux Corsan"). [Filing No. 1 at 4.]

Pursuant to the terms of the PPA and the Design-Build Contract, Isolux Corsan later executed a payment bond (the "Payment Bond") with the Co-Sureties in the penal sum of $15,350,000 to ensure that payment would be made to Isolux Corsan's subcontractors on the Project. [Filing No. 1 at 4; Filing No. 1-3.]

### B.  The Engineering Services Agreement

On August 15, 2014, Corsan entered into an Engineering Services Agreement (the "ESA") with Aztec-TYPSA for Aztec-TYPSA to be a design consultant subcontractor on the Project. [Filing No. 1 at 4; Filing No. 1-4.]  The ESA was assigned by Corsan to Isolux Corsan.  [Filing No. 1 at 4; Filing No. 1-5 at 1.]  Aztec-TYPSA assumed various obligations under the ESA to perform design-related services on the Project.  [Filing No. 1-4 at 8.]  Pursuant to the ESA, Isolux Corsan was permitted to withhold payment if it disputed "any items . . . for any reason, including the lack of supporting documentation or suspected defective or negligently performed Services . . . ." [Filing No. 1-4 at 17.]  If it disputed items, Isolux Corsan was to withhold payment for the disputed items, promptly notify Aztec-TYPSA of the dispute, and request clarification or remedial action.  [Filing No. 1-4 at 17.]  Payment for undisputed items was to be made within sixty days, although full or partial payment was not evidence of Aztec-TYPSA's satisfactory performance of the services covered by the ESA.  [Filing No. 1-4 at 17.]

Aztec-TYPSA submitted invoices to Isolux Corsan and alleges that until April 2015, the majority of them were not disputed or only partially disputed.  [Filing No. 1 at 5.]  Aztec-TYPSA contends, however, that since April 2015, Isolux Corsan failed to make the required payments within the sixty-day period.  [Filing No. 1 at 5.]  Aztec-TYPSA alleges that it served Isolux Corsan with a notice of default in April 2015, but Isolux Corsan made payment and cured that default. [Filing No. 1 at 6.]  Aztec-TYPSA served Isolux Corsan with a second notice of default on March 21, 2016, listing twenty unpaid invoices totaling $4,811,869.62.  [Filing No. 1 at 6-7; Filing No. 1-6 at 1-2.]  Isolux Corsan made partial payments, [Filing No. 1 at 7], but Aztec-TYPSA served it with a third notice of default on June 9, 2016 after additional amounts became overdue, [Filing No. 1 at 7; Filing No. 1-9].

3

On June 1, 2016, Aztec-TYPSA suspended services under the ESA.  [Filing No. 1 at 5.]  It alleges that to date, Isolux Corsan owes it an outstanding balance of $4,110,973.17.  [Filing No. 1 at 8; Filing No. 1-11.]

### C. Payment Bond Claim and Federal Lawsuit

On March 29, 2016, Aztec-TYPSA served a Statement of Amount Due on the Co-Sureties, representing that it was owed $4,679,369.62 for work performed and services rendered pursuant to the ESA.  Filing No. 1 at 8; Filing No. 1-12 at 4.]  It provided updates to the Co-Sureties as additional amounts became due and some partial payments were made.  [Filing No. 1-15.]

On June 24, 2016, Aztec-TYPSA filed a Complaint against the Co-Sureties in this Court, alleging that the Co-Sureties breached the Payment Bond by not paying the Statement of Amount Due after more than sixty days elapsed.[1]  [Filing No. 1 at 9-10.]  Aztec-TYPSA alleges that the Co-Sureties must pay all amounts due to Aztec-TYPSA pursuant to the Payment Bond, which it contends is $4,110,973.17 with prejudgment interest.  [Filing No. 1 at 10.]

On July 18, 2016, the Co-Sureties filed a Motion to Dismiss or, In the Alternative, Stay Litigation and Compel Arbitration, [Filing No. 9], asking the Court to compel arbitration of Aztec-TYPSA's claim, [Filing No. 9-1].  Aztec-TYPSA opposes that motion, [Filing No. 18], and the Co-Sureties replied in support of their position, [Filing No. 19].  The Court will now consider the merits of the pending motion.

---

[1] The Court has confirmed that based on the representations in the parties' Amended Joint Jurisdictional Statement, it can exercise diversity jurisdiction over Aztec-TYPSA's claim.  [Filing No. 28.]

**III.**

**DISCUSSION**

The Co-Sureties emphasize that the ESA includes an arbitration clause that provides that "[a]ny Dispute . . . shall be finally resolved by binding arbitration . . . ." [Filing No. 9-1 at 4 (citing Filing No. 1-4 at 87).][2]  They contend that federal policy strongly favors enforcing arbitration clauses when the parties have agreed to arbitrate the dispute at issue.  [Filing No. 9-1 at 4-7.]  The Co-Sureties argue that Aztec-TYPSA's claim that the Co-Sureties breached the Payment Bond falls within the scope of the ESA's arbitration clause and, thus, the Court should enforce the arbitration clause and dismiss Aztec-TYPSA's claim.  [Filing No. 9-1 at 7-10.]

In response, Aztec-TYPSA points out that it only seeks to recover the undisputed payments it is owed, which it contends the Co-Sureties must pay pursuant to the Payment Bond, not the ESA.  [Filing No. 18 at 1-2.]  Aztec-TYPSA emphasizes that the Payment Bond does not include an arbitration clause and that "the Payment Bond does not even reference, let alone expressly incorporate the ESA (*i.e.*, the contract containing the arbitration provision Defendants seek to invoke)."  [Filing No. 18 at 12.]  Aztec-TYPSA contends that the Co-Sureties' argument that the Payment Bond incorporates the ESA is factually incorrect because the Payment Bond only incorporates the Design-Build Contract between the Developer and Isolux Corsan.  [Filing No. 18 at 14 (referencing Filing No. 9 at 2; Filing No. 9 at 7).]  Because Aztec-TYPSA's federal action seeks to only recover amounts that Isolux Corsan has not disputed under the ESA, Aztec-TYPSA

---

[2] The Court notes that the Co-Sureties' brief generally cites the 160-page ESA for the existence of the arbitration clause on which its motion relies.  [Filing No. 9-1 at 4 (generally citing "Complaint, Exhibit 2").]  The Court's Practices & Procedures, which have already been docketed in this case, specifically direct the parties to "cite to the docket number, the attachment number (if any), and the applicable .pdf page as it appears on the docket information located at the top of the filed document."  [Filing No. 8 at 4.]  The Co-Sureties must be sure to follow this directive in all future filings.

concludes that its federal action is solely concerned with the Co-Sureties' obligations under the Payment Bond and falls outside the purview of the ESA's arbitration clause.  [Filing No. 18 at 14-17.]  Aztec-TYPSA asks the Court to find as a matter of law that the ESA was not incorporated into the Payment Bond.  [Filing No. 18 at 17.]

In reply, the Co-Sureties emphasize that Aztec-TYPSA is a party to the ESA and the ESA is a valid and enforceable contract that contains an arbitration clause.  [Filing No. 19 at 6.]  While the Co-Sureties concede that "the [Payment] Bond does not explicitly incorporate the ESA," they emphasize that the Design-Build Contract is incorporated into the Bond and that the ESA "is a subcontract of the Design-Build Contract . . . ."  [Filing No. 19 at 8.]  The Co-Sureties argue that the subject matter of Aztec-TYPSA's lawsuit falls within the scope of the ESA's arbitration clause because the ESA says that "any dispute" is subject to the arbitration clause and Aztec-TYPSA seeks payment for money allegedly owed for its services performed under the ESA.[3]  [Filing No. 19 at 9.]  Thus, the Co-Sureties ask the Court to dismiss Aztec-TYPSA's federal action and compel arbitration.  [Filing No. 19 at 13.]

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration."  *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).  The parties dispute whether the first and second elements are met in this case.  [Filing No. 18 at 10.]

---

[3] The Court notes that when quoting the ESA's arbitration clause, the Co-Sureties repeatedly bold the words "any dispute" to argue that it is so broad it encompasses Aztec-TYPSA's federal claim.  [Filing No. 9-1 at 7-8; Filing No. 19 at 9.]  In fact, as Aztec-TYPSA points out in its response brief, the ESA's arbitration clause capitalizes the word "Dispute," which Aztec-TYPSA argues is material.  [Filing No. 18 at 18 (citing (Filing No. 1-4 at 87).]  The Co-Sureties ignore that argument on reply and continue misquoting the relevant phrase.  [Filing No. 19 at 9 (twice bolding and citing the key language as "any dispute").]  The Co-Sureties must pay closer attention to detail in future filings.

The first task of a court asked to compel arbitration is to determine whether the parties "agreed to arbitrate this particular dispute, for a duty to arbitrate can arise only by agreement." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp.*, 531 F.3d 531, 535 (7th Cir. 2008). To make this determination, the Court must decide whether the plaintiff is "making a claim that is, 'on its face,' governed by the [arbitration clause]." *Id.* at 536. "The scope of the arbitration clause is established by the text of the arbitration clause itself." *Id.* If the arbitration clause is broad, there is a presumption in favor of arbitrability. *Id.* The clause should be interpreted according to its plain meaning, and the Court strives "for a commonsense result." *Id.*

"Whether a binding arbitration agreement exists is determined under principles of state contract law." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). "Indiana courts apply ordinary contract principles to arbitration agreements." *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). The party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement. *Id.* (citing *Wilson Fertilizer & Grain, Inc. v. ADM Mill. Co.*, 654 N.E.2d 848, 849 (Ind. Ct. App. 1995)). "[I]f the parties have an arbitration agreement and the asserted claims are within its scope, the motion to compel cannot be denied." *Sharif v. Wellness Intern. Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)).

"[W]here the parties enter into two agreements—though only one contains an arbitration clause, and the plaintiff brings a cause of action based, at least in part, on conduct contrary to the agreement that does not have the arbitration clause, the parties can be compelled to arbitrate only if (1) the clause itself is broad enough to encompass their dispute, or (2) the agreement containing the clause incorporates the other by reference." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027,

1033 (7th Cir. 2012). "[O]ne contract incorporates another only if there is an express intent to incorporate." *Id.* (citation omitted); *see also Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 666 (7th Cir. 2002) ("Mere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate . . . .").

The Co-Sureties concede that "the [Payment] Bond does not explicitly incorporate the ESA."[4] [Filing No. 19 at 8.] Because the ESA contains the arbitration clause the Co-Sureties are trying to invoke and it is undisputed that the Payment Bond does not show "an express intent to incorporate" the ESA, the parties can only be compelled to arbitrate Aztec-TYPSA's claim if the ESA's arbitration clause "is broad enough to encompass their dispute." *Gore*, 666 F.3d at 1033. The Co-Sureties argue that the ESA's arbitration clause is broad enough to encompass their dispute because Aztec-TYPSA seeks payment for money allegedly owed for services it performed under the ESA. [Filing No. 19 at 9.] While Aztec-TYPSA does seek payment for services it performed under the ESA—a contract it entered into with Isolux Corsan—Aztec-TYPSA is not seeking payment from Isolux Corsan in this action. In fact, Isolux Corsan is not even a party to this action.

Aztec-TYPSA's only claim in this action is against the Co-Sureties for payment under the Payment Bond. As Aztec-TYPSA emphasizes, it only seeks payment under the Payment Bond for services that Isolux Corsan has not disputed pursuant to the applicable provisions of the ESA. [Filing No. 18 at 14-15; Filing No. 1 at 5; Filing No. 1-4 at 15-18 ("Compensation and Payment"

---

[4] Given that the Payment Bond does not even reference the ESA, it cannot reasonably be argued that the Payment Bond expressly incorporates it. [Filing No. 1-3 (Payment Bond).] To the extent that the Co-Sureties argue that there is an implied incorporation because the Payment Bond references the Design-Build Contract and the ESA is a sub-contract of the Design-Build Contract, [Filing No. 19 at 8], implied references are insufficient to expressly incorporate a contract when determining whether an arbitration provision applies. *Rosenblum*, 299 F.3d at 666. Instead, like the contracts at issue in *Rosenblum*, the Payment Bond and ESA are "free-standing contracts," each of which "delineates rights and duties independent of the other and that pertain to a particular subject matter." *Id.* at 663.

section, including how Isolux Corsan can dispute charges on an Application for Payment).] The ESA mandates a procedure for Isolux Corsan to follow to withhold payments for disputed work, including "suspected defective or negligently performed Services." [Filing No. 1-4 at 16-17.] That procedure requires Isolux Corsan to "promptly notify" Aztec-TYPSA of a dispute within 10 business days of its receipt of an Application for Payment with "a written deficiency notice to [Aztec-TYPSA] setting forth with specificity any items on the Application for Payment [Isolux Corsan] refuses to approve." [Filing No. 1-4 at 16-17.] The Co-Sureties have provided no evidence that Isolux Corsan has invoked any of the dispute provisions in the ESA with regard to the amounts Aztec-TYPSA seeks payment for in this action pursuant to the Payment Bond. [Filing No. 9-1 at 3 (citing nothing in support of a general assertion of deficiency).] If such evidence exists, it was the Co-Sureties' burden to provide it because the Co-Sureties are the parties seeking to compel arbitration. *Gibson*, 121 F.3d at 1130.

In sum, Aztec-TYPSA's Complaint seeks payment from the Co-Sureties under the Payment Bond for amounts that there is no evidence Isolux Corsan disputed pursuant to the ESA. The ESA's arbitration provision cannot be read to encompass a dispute of this nature. As the United States Supreme Court has emphasized in this context, courts "must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). The Court agrees with Aztec-TYPSA that there is no evidence that at the time the ESA was executed, Aztec-TYPSA and Isolux Corsan intended for the arbitration provision to cover an unnamed surety's failure to perform under a yet-to-be-secured payment bond for amounts Aztec-TYPSA would be owed that Isolux Corsan did not dispute under the ESA. [Filing No. 18 at 16.] The Co-Sureties are not parties to the ESA, and they cite no authority for their proposition that a non-signatory can invoke an arbitration provision

that was not expressly incorporated into a contract to which the non-signatory is a party.  Instead, the commonsense result is that the ESA's arbitration provision does not apply to the claim Aztec-TYPSA brings against the Co-Sureties under the Payment Bond.[5]  *See United Steel*, 531 F.3d at 535 (holding that the arbitration clause should be interpreted according to its plain meaning and the Court strives "for a commonsense result").

For these reasons, the Court concludes that the Co-Sureties have failed to satisfy the test for compelling arbitration.  *See Zurich*, 466 F.3d at 580 (holding that to compel arbitration, a party must show, among other things "a dispute within the scope of the arbitration agreement").  Because the ESA's arbitration provision is not broad enough to cover the dispute at issue in this case, the Co-Sureties' Motion to Dismiss Or, In the Alternative, Stay Litigation and Compel Arbitration is denied.[6]  [Filing No. 9.]

## IV.
### CONCLUSION

For the reasons stated herein, the Court **DENIES** the Co-Sureties' Motion to Dismiss Or, In the Alternative, Stay Litigation and Compel Arbitration.  [Filing No. 9.]  The Co-Sureties are directed to answer or otherwise respond to Aztec-TYPSA's Complaint pursuant to the Federal Rules of Civil Procedure.  The Court also asks the assigned Magistrate Judge to hold a conference

---

[5] The Co-Sureties try to invoke language from the ESA's arbitration clause stating that it applies to any dispute "including a dispute as to the validity or existence of" the arbitration clause.  [Filing No. 19 at 9.]  That language does not change the commonsense result reached herein because the Co-Sureties were not parties to the ESA and Aztec-TYPSA seeks payment under the Payment Bond, not the ESA.

[6] In its response brief, Aztec-TYPSA requests that the Court order as a matter of law that the Payment Bond does not incorporate the ESA.  [Filing No. 18 at 17.]  As an initial matter, a motion must not be contained within a response brief unless ordered by the Court.  S.D. Ind. L.R. 7-1(a).  While the Court certainly agrees with Aztec-TYPSA based on the current record, the Court will not make that pronouncement at this stage of the litigation.

with the parties to discuss whether an early dispositive motions deadline may be preferable to more

quickly resolve some or all of the issues in the case.

Date:  October 17, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

John M. Gillum
MANIER & HEROD PC
jgillum@manierherod.com

Charles E. Harper
QUARLES & BRADY LLP
charles.harper@quarles.com

Hunter Gerard DeKoninck
QUARLES & BRADY LLP (Indianapolis)
hunter.dekoninck@quarles.com

Michael A. Rogers
QUARLES & BRADY LLP (Indianapolis)
michael.rogers@quarles.com