UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AZTEC ENGINEERING GROUP, INC., | ) | |
| TECNICA Y PROYECTOS S.A., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 1:16-cv-01657-JMS-TAB |
| vs. | ) | |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| FIDELITY AND DEPOSIT COMPANY OF | ) | |
| MARYLAND, | ) | |
| XL SPECIALTY INSURANCE COMPANY, | ) | |
| AMERICAN HOME ASSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION TO INTERVENE

In this action, Plaintiffs Aztec Engineering Group, Inc., and Tecnica y Proyectos S.A. (collectively, "Aztec-TYPSA") seek payment from Defendants Liberty Mutual Insurance Company, Fidelity and Deposit Company of Maryland, XL Specialty Insurance Company, and American Home Assurance Company (collectively, the "Co-Sureties") pursuant to a payment bond issued on a 21-mile portion of the I-69 development project.  Isolux-Corsán, LLC ("Isolux-Corsán") wants to intervene to assert a counterclaim against Aztec-TYPSA and then seek to stay this litigation to pursue arbitration.  [Filing No. 35.]  For the reasons that follow, the Court denies Isolux-Corsán's request to intervene.

## I.
### STANDARD OF REVIEW

On timely motion, the Court must permit anyone to intervene as a matter of right who "claims an interest relating to the property or transaction that is the subject of the action, and is so

situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. Pro. 24(a)(2). If the movant does not have a right to intervene, the Court may exercise its discretion to permit intervention if the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Pro. 24(b)(1)(B). In doing so, however, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Pro. 24(b)(3). Permissive intervention and intervention as a matter of right both must be pursued through a timely motion. *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797-98 (7th Cir. 2013).

## II.
### BACKGROUND

On April 8, 2014, the Indiana Finance Authority ("IFA") awarded I-69 Development Partners LLC (the "Developer") a Public-Private Agreement (the "PPA") pursuant to Indiana Code § 8-15.5-1-1, *et seq.*, for the Developer to design, build, finance, operate, and upgrade approximately 21 miles of existing State Road 37 into an interstate highway (the "Project"). [Filing No. 1 at 3.] Corsan Corviam Construcción, SA ("Corsan"), entered into a Design-Build Contract with the Developer for the design and construction work of the Project. [Filing No. 1 at 4.] Corsan later assigned the Design-Build Contract to its affiliate, Isolux-Corsán. [Filing No. 1 at 4.]

Pursuant to the terms of the PPA and the Design-Build Contract, Isolux-Corsán later executed a payment bond (the "Payment Bond") with the Co-Sureties in the penal sum of $15,350,000 to ensure that payment would be made to Isolux-Corsán's subcontractors on the Project. [Filing No. 1 at 4; Filing No. 1-3.]

### B. The Engineering Services Agreement

On August 15, 2014, Corsan entered into an Engineering Services Agreement (the "ESA") with Aztec-TYPSA for Aztec-TYPSA to be a design-consultant subcontractor on the Project. [Filing No. 1 at 4; Filing No. 1-4.]  The ESA was assigned by Corsan to Isolux-Corsán.  [Filing No. 1 at 4; Filing No. 1-5 at 1.]  Aztec-TYPSA assumed various obligations under the ESA to perform design-related services on the Project.  [Filing No. 1-4 at 8.]  Pursuant to the ESA, Isolux-Corsán was permitted to withhold payment if it disputed "any items . . . for any reason, including the lack of supporting documentation or suspected defective or negligently performed Services . . . ." [Filing No. 1-4 at 17.]  If it disputed items, Isolux-Corsán was to withhold payment for the disputed items, promptly notify Aztec-TYPSA of the dispute, and request clarification or remedial action.  [Filing No. 1-4 at 17.]  Payment for undisputed items was to be made within sixty days, although full or partial payment was not evidence of Aztec-TYPSA's satisfactory performance of the services covered by the ESA.  [Filing No. 1-4 at 17.]

Aztec-TYPSA submitted invoices to Isolux-Corsán and alleges that until April 2015, the majority of them were not disputed or only partially disputed.  [Filing No. 1 at 5.]  Aztec-TYPSA contends, however, that since April 2015, Isolux-Corsán failed to make the required payments within the sixty-day period.  [Filing No. 1 at 5.]  Aztec-TYPSA alleges that it served Isolux-Corsán with a notice of default in April 2015, but Isolux-Corsán made payment and cured that default. [Filing No. 1 at 6.]  Aztec-TYPSA served Isolux-Corsán with a second notice of default on March 21, 2016, listing twenty unpaid invoices totaling $4,811,869.62.  [Filing No. 1 at 6-7; Filing No. 1-6 at 1-2.]  Isolux-Corsán made partial payments, [Filing No. 1 at 7], but Aztec-TYPSA served it with a third notice of default on June 9, 2016 after additional amounts became overdue, [Filing No. 1 at 7; Filing No. 1-9].

3

On June 1, 2016, Aztec-TYPSA suspended services under the ESA.  [Filing No. 1 at 5.]  It alleges that to date, Isolux-Corsán owes it an outstanding balance of $4,110,973.17.  [Filing No. 1 at 8; Filing No. 1-11.]

### C.  Payment Bond Claim and Federal Lawsuit

On March 29, 2016, Aztec-TYPSA served a Statement of Amount Due on the Co-Sureties, representing that it was owed $4,679,369.62 for work performed and services rendered pursuant to the ESA.  [Filing No. 1 at 8; Filing No. 1-12 at 4.]  It provided updates to the Co-Sureties as additional amounts became due and some partial payments were made.  [Filing No. 1-15.]

On June 24, 2016, Aztec-TYPSA filed a Complaint against the Co-Sureties in this Court, alleging that the Co-Sureties breached the Payment Bond by not paying the Statement of Amount Due after more than sixty days elapsed.  [Filing No. 1 at 9-10.]  Aztec-TYPSA alleges that the Co-Sureties must pay all amounts due to Aztec-TYPSA pursuant to the Payment Bond, which it contends is $4,110,973.17 with prejudgment interest.  [Filing No. 1 at 10.]

On July 18, 2016, the Co-Sureties filed a Motion to Dismiss or, In the Alternative, Stay Litigation and Compel Arbitration, [Filing No. 9], asking the Court to compel arbitration of Aztec-TYPSA's claim, [Filing No. 9-1].  Aztec-TYPSA opposed that motion, [Filing No. 18], and on October 17, 2016, the Court denied the Co-Sureties' requested to dismiss or stay this litigation, [Filing No. 30].  On October 28, 2016, Isolux-Corsán filed a Motion to Intervene in this litigation. [Filing No. 35.]  Aztec-TYPSA opposes that motion, [Filing No. 43], and the Co-Sureties have not filed a response.  The Court will now consider Isolux-Corsán's request to intervene.

### III.
### DISCUSSION

Isolux-Corsán argues that the Court must allow it to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2).  Alternatively, it asks the Court to exercise its

4

discretion to allow it to permissively intervene pursuant to Federal Rule of Civil Procedure 24(b)(1)(B).  Isolux-Corsán's purpose for intervening is "to counterclaim against Aztec-TYPSA under . . . the ESA [and] then move to stay the Complaint and the ESA counts of its counterclaim and to compel arbitration of the entirety of the ESA disputes."[1] [Filing No. 36 at 5.]  Before turning to the merits of Isolux-Corsán's intervention request, the Court must address an argument that Aztec-TYPSA raises in its response brief that Isolux-Corsán's motion should be denied due to a procedural violation.

### A.  Federal Rule of Civil Procedure 24(c)

Aztec-TYPSA contends that Isolux-Corsán's motion should be denied because Isolux-Corsán violated Federal Rule of Civil Procedure 24(c) by not attaching a proposed pleading to its motion to intervene.  [Filing No. 43 at 22-23.]  Aztec-TYPSA also argues that Isolux-Corsán's strategy to seek to stay this litigation and send it to arbitration runs contrary to the spirit of Rule 24(c), since Isolux-Corsán does not actually intend to pursue any claims in this litigation.  [Filing No. 43 at 22-23.]

In reply, Isolux-Corsán argues that it has not run afoul of Rule 24(c) because arbitration is waivable and it "feared that an answer prior to its motion to compel arbitration could engender a waiver argument." [Filing No. 45 at 17-18.]  Isolux-Corsán attached a proposed answer to its reply brief to attempt to cure any defect with regard to Rule 24(c).  [Filing No. 44-1.]  Isolux-Corsán contends that its strategy does not run afoul of the federal rules, which actually favor arbitration,

---

[1] In its opening brief, Isolux-Corsán also referenced claims it may have against Aztec-TYPSA pursuant to a Team Member Agreement ("TMA").  [Filing No. 36 at 5.]  Because it conceded in its reply brief that it could not pursue those claims in this litigation, the Court will not discuss the TMA in its analysis.  [Filing No. 45 at 16 ("[Isolux-Corsán] will not seek to assert the TMA in this action.").]

and that courts prefer not to decide motions on the basis of non-prejudicial, technical defects. [Filing No. 45 at 18-19.]

Federal Rule of Civil Procedure 24(c) provides that a motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." The Seventh Circuit Court of Appeals does "not advocate a strict interpretation of the rule in all circumstances . . . but that does not mean that intervenors may totally ignore the rule." *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987).

Isolux-Corsán is correct that "[a] contractual right to arbitrate may be waived expressly or implicitly, and a party that chooses a judicial forum for the resolution of a dispute is presumed to have waived its right to arbitrate." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002). That said, "[c]ourts must examine the totality of the circumstances and determine whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Id.* The parties do not adequately analyze whether Isolux-Corsán actually would have waived its contractual right to arbitrate its counterclaim by filing a proposed pleading pursuant to Rule 24(c) with its motion to intervene, and the Court will not do so for them.[2] Additionally, there is a well-established "federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). Thus, under these circumstances, the Court will turn to the merits of Isolux-Corsán's intervention request, rather than denying it outright because of a Rule 24(c) violation.

---

[2] The Court does note that the proposed pleading Isolux-Corsán filed with its reply brief likely still does not comply with Rule 24(c) because it does not include the counterclaim Isolux-Corsán references in its briefing as the motivation for its intervention request. [Filing No. 44-1.]

### B.  Intervention as a Matter of Right

Isolux-Corsán argues that it has a right to intervene in Aztec-TYPSA's action against the Co-Sureties because its motion is timely and the original parties will not be prejudiced by its intervention. [Filing No. 36 at 7-9.] Isolux-Corsán contends that it would be prejudiced if it cannot intervene because "disallowing intervention would prevent it from presenting the totality of its ESA losses—which could result in an affirmative recovery from Aztec-TYPSA—in a single dispute resolution." [Filing No. 36 at 9.] Isolux-Corsán emphasizes that it has an interest in the subject matter of this litigation and that the Co-Sureties cannot adequately protect that interest because they have no ground to seek recovery from Aztec-TYPSA. [Filing No. 36 at 10.] It argues that its interests could be impaired if it cannot intervene because it could be forced to indemnify the Co-Sureties even though it is not a party to this lawsuit. [Filing No. 36 at 11.]

In response, Aztec-TYPSA contends that Isolux-Corsán's intervention request is untimely because it did not file its motion until after the Co-Sureties' arbitration request was denied. [Filing No. 43 at 4-8.] It also argues that the original parties will suffer prejudice if Isolux-Corsán is allowed to intervene because cross-summary judgment motions are briefed and Isolux-Corsán admits it will move to stay the litigation. [Filing No. 43 at 4-8.] Aztec-TYPSA argues that Isolux-Corsán will not be prejudiced if it is not a party to this action because only undisputed amounts owed under the ESA are at issue herein, and the Co-Sureties can adequately represent any interest that Isolux-Corsán has. [Filing No. 43 at 8-11; Filing No. 43 at 17-19.] Aztec-TYPSA admits that any disputes regarding alleged damages for defective work must be arbitrated, and it emphasizes that Isolux-Corsán has not initiated arbitration. [Filing No. 43 at 8.]

In reply, Isolux-Corsán again contends its motion is timely and emphasizes that it "just seeks the opportunity to address the scope of the [ESA's arbitration] clause." [Filing No. 45 at 2-

9.] It points to a savings clause in the ESA that provides that "[a]ny payment made by [Isolux-Corsán] hereunder does not relieve [Aztec-TYPSA] of any responsibility or liability of properly performing all Services in accordance with this [ESA] . . . ." [Filing No. 45 at 10.] Isolux-Corsán emphasizes that even if amounts paid were initially undisputed, the ESA's savings clause allows Isolux-Corsán to pull back those payments. [Filing No. 45 at 10.] For these reasons, Isolux-Corsán argues that it has a right to intervene in this action.

There are four requirements to intervene as a matter of right: (1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties. *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002) (citing Fed. R. Civ. Pro. 24(a)). The burden is on the party seeking to intervene as a matter of right to show that all four criteria are met. *Reid*, 289 F.3d at 1017 (citation omitted); *see also United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003) ("Failure to satisfy any one of the four intervention factors is sufficient grounds to deny the intervention."). If the party seeking to intervene does not meet its burden to show that all four criteria are met, "then the district court must deny intervention of right." *Reid*, 289 F.3d at 1017.

Although the parties dispute the timeliness of Isolux-Corsán's Motion to Intervene, the Court will assume that its request is timely, given that this case is only about six months old and Isolux-Corsán moved to intervene within ten days of the Court denying the Co-Sureties' arbitration request. But timeliness alone is not enough. To support its alleged interest in this litigation, Isolux-Corsán relies on the ESA and the fact that Aztec-TYPSA performed services for Isolux-Corsán under the ESA for which it seeks compensation. But Isolux-Corsán ignores that Aztec-TYPSA initiated this action against the Co-Sureties, alleging that the Co-Sureties breached the Payment

8

Bond, not the ESA.  [Filing No. 1 at 9-10.]  Importantly, Isolux-Corsán is not a party to the Payment Bond, and the Payment Bond does not incorporate the ESA.  As the Court noted in its Order denying the Co-Sureties' arbitration request, "[w]hile Aztec-TYPSA does seek payment for services it performed under the ESA—a contract it entered into with Isolux-Corsán—Aztec-TYPSA is not seeking payment from Isolux-Corsán in this action."  [Filing No. 30 at 8.]  Instead, Aztec-TYPSA seeks payment from the Co-Sureties under the Payment Bond for unpaid amounts that Isolux-Corsán has not disputed pursuant to provisions of the ESA.[3]  [*See* Filing No. 1-10.]  Given this narrow scope, the Court disagrees with Isolux-Corsán that it has an interest in the subject matter of the pending litigation.  Because it does not have an interest, Isolux-Corsán cannot suffer a potential impairment of an interest if it is not allowed to intervene.

Even if the Court assumes that Isolux-Corsán has an interest in this litigation that could be affected, that interest is adequately represented by the Co-Sureties.  Indiana law provides that a surety "is not liable unless the principal is, and, therefore, [the surety] may plead any defense available to the principal."  *BMD Contractors, Inc. v. Fid. & Deposit Co. of Maryland*, 679 F.3d 643, 653 (7th Cir. 2012).  In other words, to the extent that Isolux-Corsán has an interest in this litigation, that interest is adequately protected by the Co-Sureties, who may plead any defense available to Isolux-Corsán and have an incentive to do so to reduce their own potential liability to Aztec-TYPSA.

For these reasons, the Court concludes that Isolux-Corsán has not met its burden to intervene as a matter of right, and the Court must deny its request to do so.

---

[3] Because these undisputed amounts have not been paid, Isolux-Corsán's reliance on the ESA's savings clause is misplaced.  [Filing No. 9-3 at 17 (ESA provision providing that "*[a]ny payment* made by [Isolux-Corsán] hereunder does not relieve [Aztec-TYPSA] of any responsibility or liability of properly performing all Services in accordance with this [ESA] . . . .") (emphasis added).]

### C.  Permissive Intervention

Isolux-Corsán argues that if it does not have a right to intervene in this action, it should still be permitted to intervene because it has a claim or defense that shares a common question of law or fact with the main action.  [Filing No. 36 at 13-14 (citing Fed. R. Civ. Pro. 24(b)).]  It emphasizes that permissive intervention is within the Court's discretion, and it alleges that the claims it seeks to pursue against Aztec-TYPSA for breach of the ESA raise the same fundamental issues as the claims pending in this litigation.  [Filing No. 36 at 14-15.]  Isolux-Corsán contends that allowing it to intervene will serve judicial economy and not unduly delay or prejudice Aztec-TYPSA because "intervention will allow it the ability to enforce the arbitration clause of the ESA" and intervention "will prevent the delay and potential prejudice of multiple dispute resolution proceedings."  [Filing No. 36 at 15-16.]

In response, Aztec-TYPSA asks the Court to deny Isolux-Corsán's request for permissive intervention.  [Filing No. 43 at 19-23.]  It argues that Isolux-Corsán's proposed claims have limited common questions of fact and law with the pending litigation and that it will be prejudiced if Isolux-Corsán is permitted to pursue them in this litigation.  [Filing No. 43 at 21-22.]  Aztec-TYPSA also points out that this Court would lack subject matter jurisdiction over Isolux-Corsán's proposed counterclaim, which Aztec-TYPSA contends is required for permissive intervention.  [Filing No. 43 at 19-20.]

In reply, Isolux-Corsán does not address Aztec-TYPSA's subject matter jurisdiction argument or specifically reassert its permissive intervention arguments.  [Filing No. 45.]

The Court may exercise its discretion to permit intervention if the movant "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. Pro.

24(b)(1)(B).  In doing so, however, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Pro. 24(b)(3).

Isolux-Corsán apparently concedes that the Court must have independent subject matter jurisdiction over its counterclaim for Isolux-Corsán to permissively intervene, given that it does not dispute Aztec-TYPSA's argument.  While Aztec-TYPSA does not cite binding precedent for this principle, district courts in this Circuit have denied permissive intervention on this basis. *See, e.g.*, *Davila v. Arlasky*, 141 F.R.D. 68, 73 (N.D. Ill. 1991) ("Federal courts do not have ancillary jurisdiction over the permissive intervenor's claims as they do with intervention as of right.  In order to be allowed permissive intervention the Insurers must establish an independent basis for subject matter jurisdiction.").  Isolux-Corsán concedes the lack of diversity of citizenship between it and Aztec-TYPSA in another portion of its brief.  [Filing No. 45 at 16.] Thus, the Court denies Isolux-Corsán's permissive intervention request because the Court would not have an independent basis for subject matter jurisdiction over Isolux-Corsán's counterclaim against Aztec-TYPSA.

Out of an abundance of caution, the Court will briefly address the merits of Isolux-Corsán's request for permissive intervention.  The Court disagrees with Isolux-Corsán that its proposed crossclaim shares common questions of law or fact with the underlying action.  Again, Isolux-Corsán's proposed counterclaim arises out of the ESA and involves disputed claims that Isolux-Corsán would then seek to arbitrate under the ESA.  But Aztec-TYPSA initiated this action against the Co-Sureties, alleging that they breached the Payment Bond, not the ESA. [Filing No. 1 at 9-10.] Isolux-Corsán is not a party to the Payment Bond, and the Payment Bond does not incorporate the ESA.  Additionally, the Court agrees with Aztec-TYPSA that it would suffer prejudice if Isolux-Corsán is allowed to intervene because Isolux-Corsán has confessed that its strategy is "to counterclaim against Aztec-TYPSA under . . . the ESA [and] then move to stay the Complaint and

the ESA counts of its counterclaim and to compel arbitration of the entirety of the ESA disputes."
[Filing No. 36 at 5.]  The Court has already found that the subject matter of the pending action
between Aztec-TYPSA and the Co-Sureties is not arbitrable.  [Filing No. 30.]  Allowing Isolux-
Corsán to inject potentially arbitrable claims into this litigation just to seek to stay it and delay
resolution of the pending non-arbitrable claims is inefficient and prejudicial, especially given that
Aztec-TYPSA is experiencing financial distress due to the non-payment at issue in this case and
that Aztec-TYPSA and the Co-Sureties already have fully briefed cross-motions for summary
judgment on file.  For these reasons, the Court denies Isolux-Corsán's request for permissive
intervention.

As a final point, the Court notes that if Isolux-Corsán believed it was entitled to initiate
arbitration on claims it thinks are arbitrable, there is nothing about this litigation that prevented it
from doing so.  The fact that it has not initiated arbitration suggests that its proposed intervention
here was geared more toward delay than the merits of any dispute.

## IV.
### CONCLUSION

For the reasons stated herein, Isolux-Corsán's Motion to Intervene is **DENIED**.  [Filing
No. 35.]

Date: 1/4/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF to Counsel of Record:**

J. Michael Cavosie
EASTER & CAVOSIE
mcavosie@easterandcavosie.com

Jarrod W. Stone
MANIER & HEROD PC
jstone@manierherod.com

John M. Gillum
MANIER & HEROD PC
jgillum@manierherod.com

Charles E. Harper
QUARLES & BRADY LLP
charles.harper@quarles.com

Hunter Gerard DeKoninck
QUARLES & BRADY LLP (Indianapolis)
hunter.dekoninck@quarles.com

Michael A. Rogers
QUARLES & BRADY LLP (Indianapolis)
michael.rogers@quarles.com